# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

GUTBERTO POSADA-COLLAZO,      )
                                      )
          Plaintiff,         )
                                      )        **Civil Action No. 3:14-cv-01885**
      v.                 )        **Judge Haynes / Knowles**
                                      )
CAROLYN W. COLVIN,           )
Acting Commissioner of Social Security,   )
                                      )
          Defendant.      )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 13. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 14.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on November 8, 2010, alleging that he had

been disabled since November 19, 2008, due to his spinal injury, hypertension, low-vision, and

high cholesterol.  Docket No. 10, Attachment ("TR"), TR 129-35, 136-42, 168.  Plaintiff's

applications were denied both initially (TR 62, 63) and upon reconsideration (TR 64, 65).

Plaintiff subsequently requested (TR 81-82) and received (TR 28-57) a hearing.  Plaintiff's

hearing was conducted on February 28, 2013, by Administrative Law Judge ("ALJ") Frank

Gregori.  TR 28-57.  Plaintiff and vocational expert ("VE"), Melissa Neel, appeared and testified.

*Id.*  Spanish interpreter Tonya Miller interpreted for Plaintiff at the hearing.  *Id.*

On April 19, 2013, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 8-

27.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the
>     Social Security Act through March 31, 2014.
>
> 2.  The claimant has not engaged in substantial gainful activity
>     since November 19, 2008, the alleged onset date (20 CFR
>     404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairment:
>     osteoarthritis of the lumbar spine (20 CFR 404.1520(c) and
>     416.920(c)).
>
> 4.  The claimant does not have an impairment or combination
>     of impairments that meets or medically equals the severity
>     of one of the listed impairments in 20 CFR Part 404,
>     Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,
>     404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, I find that
>     the claimant has the residual functional capacity to perform
>     light work as defined in 20 CFR 404.1567(b) and
>     416.967(b) except that he can occasionally lift and/or carry
>     up to 50 pounds; frequently lift and/or carry up to 10
>     pounds; stand and/or walk for a total of about 6 hours in an

8-hour day; sit for a total of about 6 hours in an 8-hour day; never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps or stairs; occasionally stoop; frequently balance, kneel, and crouch; should avoid working at unprotected heights; and due to being very limited in communication in English, could not perform any duties that would involve significant/substantial conversations in English or that would involve following oral instructions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 20, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 19, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 13-22.

On May 21, 2013, Plaintiff timely filed a request for review of the hearing decision. TR

7.  On July 19, 2014, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner.   This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v.*

*N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

5

or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175,

1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by failing to: (1) find Plaintiff's degenerative disc disease severe, and, accordingly, assess whether his spinal impairments meet or equal a listing; and (2) properly assess Plaintiff's residual functional capacity. Docket No. 13-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Listing 1.04

Plaintiff argues that the ALJ erred by failing to find that Plaintiff suffered from degenerative disc disease and, accordingly, "committed reversible error" by failing to assess whether his spinal impairments met or medically equaled Listing 1.04. Docket No. 13-1 at 6. Plaintiff contends that the ALJ's finding that Plaintiff suffered from "osteoarthritis of the lumbar spine," as diagnosed by Dr. Swanson, was erroneous because Dr. Swanson's diagnosis was "made only from his perfunctory exam without the benefit of X-rays, MRI scans, or access to the medical records from Drs. Wagner or Elalayi." *Id.* Plaintiff argues instead that his diagnosis of radiculopathy was "binding upon the ALJ" because his treating physicians, board certified neurologist Dr. Martin Wagner and neurosurgeon Dr. Tarek Elalayi, "clearly" diagnosed him with it, and because objective medical evidence, including his MRI scans from December 2008 "clearly" indicated herniated discs at C5-C6 and L5-S1 with nerve root compression, supports

that diagnosis. *Id.* at 6-7 (*citing* TR 205, 210, 215, 220-21, 261).[2]

Plaintiff further contends that the evidence of record "raises a substantial question" as to whether his cervical and lumbar impairments meet or medically equal Listing 1.04. *Id.* at 8. Specifically, Plaintiff argues that the evidence demonstrates that: (1) as stated above, his MRI images from December 2008 "clearly" indicate nerve root compression at L5-S1 and C5-C6; (2) his nerve conductance testing "definitively" showed diminished nerve function in his lower left extremity; (3) his treating physicians, Drs. Wagner and Elalayi, both noted that he: (a) experienced pain due to his lumbar and cervical disorders, (b) suffered from reduced lumbar and cervical range of motion, (c) suffered sensory and reflex loss, and (d) exhibited positive straight leg raises; and (4) examining consultant Dr. Erik Swanson noted three years later that he: (a) experienced difficulty rising from a seated position and mounting or dismounting an exam table, (b) was limited in his range of motion, and (c) exhibited positive straight leg raise tests. *Id.* (*referencing* TR 192, 205, 208, 210, 215, 227-29, 261-62).

Defendant responds that, regardless of the precise label given by the ALJ to Plaintiff's back impairment, when finding that Plaintiff had osteoarthritis and that the osteoarthritis did not meet or medically equal a listing, the ALJ properly considered the entirety of the evidence of record. Docket No. 14 at 7. Defendant explains, "What label the ALJ assigned Plaintiff's back

---

[2] Plaintiff's brief appears to use the terms "degenerative disc disease" and "radiculopathy" interchangeably in its argument. For example, Plaintiff states in his brief, "The ALJ erred in not finding that Mr. Posada suffers from degenerative disc disease, and, accordingly, committed reversible error by failing to assess whether Mr. Posada's spinal impairments meet or equal listing 1.04 under 20 C.F.R §404, Subpart P, Appendix I." Docket No. 13-1, p. 1. He later states, "ALJ Gregori's failure to find Mr. Posada's spinal radiculopathy, and, subsequently, his failure to assess it against 20 C.F.R. 404, Subpart P, Appendix I constitutes reversible error." *Id.*, p. 7.

impairment is not the critical issue; rather, the crucial inquiry is whether the ALJ properly analyzed the evidence of record as a whole in evaluating the limitations flowing from the back condition and he properly did so here." *Id.* Defendant notes that "it is the ALJ's role to determine Plaintiff's impairments and the credible limitations flowing from them." *Id.*

Defendant asserts that Plaintiff had the burden to show that he met the requirements for Listing 1.04, but that he failed to meet that burden. Docket No. 14 at 5, 10. Specifically, Defendant argues that Plaintiff has not alleged any motor loss, and that the evidence of record does not establish any such loss. *Id.* at 5 (*citing* TR 205 (no objective motor deficit), 208 (no objective weakness), 217 (no objective motor deficit), 221 (no objective motor loss), 228 (same), 261 (motor testing was symmetric)). Defendant additionally maintains that, although Plaintiff cited to specific records in arguing that some of the requirements of Listing 104.A were met, "there was also evidence showing no sensory or motor loss, no weakness, negative straight-leg raising, normal gait and station, and no spinal tenderness and no spasms." *Id.* at 6 (*citing* TR 205, 208, 217, 221, 225-26). Defendant also notes that Plaintiff: (1) denied having back or joint pain at examinations in May and June of 2010; (2) told his provider in June 2010 that he had been working driving trucks; and (3) did not complain of back pain or related symptoms at his examination in March 2012, which yielded normal findings. *Id.* (*citing* TR 238-42, 251).

Defendant further responds that Plaintiff overlooks factors highlighting why he did not meet or medically equal Listing 1.04. *Id.* (*referencing* TR 18-21). In particular, Defendant points out that the ALJ acknowledged that: (1) Plaintiff's minimal, conservative treatment contradicted his claims of disabling pain; (2) Plaintiff's treatment was "sporadic and short-term"; (3) several of Plaintiff's physical examinations were normal, which contradicts Plaintiff's

allegations of disabling pain; (4) Plaintiff's allegations of neck pain were inconsistent with the record and with the ALJ's personal observations at the hearing; (5) Plaintiff's reported back pain was inconsistent; (6) Plaintiff made inconsistent statements regarding his ability to work during the alleged disability period; and (7) there were inconsistencies regarding Plaintiff's allegation that he was completely unable to communicate in English. *Id.* at 7-10 (*citing* TR 18-20). Defendant argues therefore that "[t]he medical evidence does not support a finding that Plaintiff is disabled, as the majority of the record show Plaintiff received minimal, conservative treatment that was sporadic and short-term, accompanied by multiple normal examinations and several denials of back pain." *Id.* at 10. Defendant maintains that, "in finding that Plaintiff did not meet a listing and that his claims of total disability were unsupported by the record.," the ALJ properly evaluated Plaintiff's credibility, and properly considered the entirety of the evidence of record. *Id.*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not "severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as "a de minimis hurdle" in the disability determination process, the goal of which is to screen out groundless claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ in the instant action found that Plaintiff had the severe impairment of osteoarthritis of the lumbar spine (TR 13), and then went on to complete the sequential evaluation process (TR 13-23). Because the ALJ specifically found that Plaintiff had at least one severe impairment and completed the sequential evaluation process, the ALJ's alleged failure to find Plaintiff's degenerative disc disease or radiculopathy to be "severe" cannot constitute grounds for reversal. *See Maziarz*, 837 F.2d at 244. Accordingly, Plaintiff cannot prevail on this ground.

At step three of the sequential evaluation process, a claimant will be found disabled if his impairment meets or medically equals a listed impairment. 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). With regard to Listing 1.04, which relates to "Disorders of the Spine," the Code of Federal Regulations provides, in pertinent part, that a "Disorder of the Spine" that meets or equals Listing 1.04A is:

> (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of the motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by

> sensory or reflex loss and, if there is involvement of the
> lower back, positive straight-leg raising test (sitting and
> supine);

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 1.04A.[3]

As can be seen, in order to meet Listing 1.04A, Plaintiff must show that he has one of the

stated conditions resulting in the compromise of a nerve root (including the cauda equina) or the

spinal cord, along with pain, limitation of motion of the spine, motor loss accompanied by

sensory or reflex loss, and, because he is claiming lower back involvement, a positive straight-leg

raising test.

The ALJ discussed Plaintiff's back impairments and the related medical evidence as

follows:

> As for the evidence of record, the claimant was followed by Dr.
> Martin Wagner in the aftermath of the claimant's November 2008
> automobile accident. Dr. Wagner obtained MRIs of the lumbar
> and cervical spines on December 11, 2008. The lumbar spine MRI
> revealed internal disc derangement and central left paracentral
> shallow disc protrusion at L4-L5 and L5-S1, without focal neural
> impingement. The cervical spine MRI revealed reversal of typical
> cervical lordosis; shallow disc protrusions at C3-C4, C4-C5, and
> C5-C6, with the greatest cord deformation at C5-C6. Ex. 1F, pp.
> 7-8.
>
> A partial chiropractic note dated January 19, 2009, is reproduced in
> Dr. Wagner's records. This note indicates that the claimant's
> chiropractor considered his condition to be permanent and
> stationary. In addition, the claimant was noted to have somewhat
> reduced cervical spine range of motion. Ex. 1F, p. 5.
>
> On February 5, 2009, Dr. Wagner drafted a letter to Dr. Megan
> Donachic concerning the claimant's condition. On that date, the
> claimant reported left lower back pain that radiated to the left

---

[3] Plaintiff argues in his brief that he meets or equals the requirements of Listing 1.04A.
Docket No. 13-1 at 8. Accordingly, the Court will analyze Plaintiff's arguments in that light.

lower extremity. He described the pain as continuous, but it varied "from mild to severe." The claimant said his pain became severe if he stood or walked for longer than one hour at a time. He also reported occasional weakness and occasional "pins-and-needles" paresthesias of the left leg. A review of systems was negative for significant problems. However, the claimant was noted to experience "some neck discomfort and some stiffness," but he "denie[d] any radicular neck pain, weakness, numbness, or paresthesias of the upper extremities." On examination, the claimant's neck was supple with full range of motion, including full flexion, extension, rotation to either side, and lateral flexion to either side. Dr. Wagner noted the presence of mild bilateral posterior tenderness of the cervical spine, but there was no spasm. Straight leg raise testing was negative bilaterally. There was palpable spasm of the left lumbar paraspinal muscles, but the claimant was able to bend forward to touch his toes. Dr. Wagner noted no objective weakness of the upper or lower extremities, although the claimant's gait was "somewhat antalgic." Dr. Wagner prescribed a non-steroidal anti-inflammatory (NSAID) topical gel, as well as a muscle relaxer. Ex. 1F, pp. 6, 17.

The claimant returned to Dr. Wagner on March 12, 2009. Dr. Wagner noted that the results of an EMG/NCS of the left lower extremity were consistent with a left L5 and S1 radiculopathy, for which the claimant would be referred to a surgeon for consultation. Dr. Wagner again drafted a letter to Dr. Donachic. On physical exam, the claimant's cervical spine continued to retain full range of motion in all planes with "only slight bilateral posterior tenderness, without spasm." Straight leg raise testing was positive at 90 degrees but negative prior to that point. Again, there was palpable spasm of the left lumbar paraspinal muscles, which were "quite tender." The claimant's NSAID gel was continued, and he was referred to Dr. Tarek Elalayli for consultation. Ex. 1F, pp. 13-14.

The claimant presented for a consultation with Dr. Elalayli on April 8, 2009. Dr. Elalayli noted that the claimant "appear[ed] to be healthy and in no distress." He had good peripheral pulses and demonstrated a steady gait. The claimant's spinal range of motion was moderately restricted, and straight leg raise testing was positive on the left. There was no hip irritability, but there was tenderness to palpation of the lower back. Dr. Elalayli noted decreased sensation of the left posterior calf, as well as diminished deep tendon reflexes in the left lower extremity. Dr. Elalayli

14

assessed the claimant with degenerative disc disease and with a herniated disc at L5-S1 on the left. He gave the claimant two treatment options: (1) obtain a series of epidural steroid injections, or (2) have back surgery. Dr. Elalayli advised the claimant to consider his options and let Dr. Elalayli know how he wanted to proceed. Ex. 7F, pp. 1-2. There is no evidence that the claimant returned to Dr. Elalayli after this single visit, and the claimant testified during the hearing that he had pursued neither epidural steroid injections nor back surgery.

The claimant's last documented appointment with Dr. Wagner took place on April 9, 2009. Dr. Wagner indicated that the claimant had failed to respond to conservative treatment, including six weeks of physical therapy and chiropractic care. He also recounted the claimant's MRI and EMG/NCS findings, discussed above. On examination, straight leg raise testing was positive on the left, and there was palpable spasm of the left lumbar paraspinal muscles. The claimant's gait was somewhat antalgic, but there were no objective motor or sensory deficits. Dr. Wagner indicated that the claimant had reached maximum medical improvement and that he "retain[ed] a 20% permanent-partial impairment due to the traumatic left lumbar radiculopathies." Ex. 1F, pp. 3-4.

A review of the record indicates that the claimant neither sought nor obtained treatment of any kind between April 2009 and May 2010, a period of more than one year.

On May 27, 2010, the claimant presented to United Neighborhood Health Services (UNHS) for examination. The claimant "[r]eport[ed] he [was] healthy." A review of systems was completely negative, including no back or joint pain. On examination, the claimant was in no acute distress. . . . He exhibited no musculoskeletal abnormalities, normal extremities, and no neurological deficits. Overall, the claimant's physical exam was completely normal. Ex. 4F, pp. 4-5.

The claimant returned to UNHS on June 22, 2010. . . . As before, the claimant's review of systems was completely negative, and his physical exam was completely normal. Ex. 4F, pp. 1-2.

There is no evidence that the claimant returned to UNHS after the two aforementioned visits, both of which took place in a span of less than four weeks.

A review of the record indicates that the claimant neither sought nor obtained treatment of any kind between June 2010 and November 2011, a period of more than one year and four months.

The claimant presented to Matthew Walker Comprehensive Health Center (MWCHC) on November 2, 2011. The claimant reported moderate lumbosacral pain with lower extremity weakness. He also reported associated limping, numbness, and tingling. Despite his reported symptoms, the claimant's physical exam yielded completely normal findings, as at UNHS. Ex. 5F, p. 1-4.

On March 20, 2012, the claimant presented to the Rutherford County Health Department (RCHD) to establish care. He complained of allergy problems, but his treatment records do not document any reported back pain or related symptoms. On examination, the claimant's back was normal, his neck was normal, and the only documented abnormalities were minor and related to season allergies. . . .

In addition to the foregoing treatment, Dr. Erik Swanson performed a consultative examination of the claimant. On examination, Dr. Swanson noted the claimant to have normal gait and station with normal mobility and no need for an assistive device. The claimant's neck was normal. His back was symmetric with no spinal tenderness, no paraspinal muscle spasms, and no bony abnormalities. His extremities were normal, and he retained 5/5 strength throughout. His dorsolumbar range of motion was limited, and his right hip flexion was reduced, although he retained full range of motion of both hips in all other planes. The claimant otherwise retained full range of motion throughout, including his neck/cervical spine. Straight leg raise testing was positive at 70 degrees. Reflexes remained symmetric, and his Tinel's sign, Phalen's sign, and Romberg test were all negative. In pertinent part, Dr. Swanson assessed the claimant with osteoarthritis of the lumbar spine. Ex. 2F, pp. 4-7.

. . .

. . . the claimant's reported back-related problems have been inconsistent, as a whole. For example, while the claimant testified to severe back pain that was disabling in nature, his reported episodes of severe back pain have been intermittent, at most, according to a review of the record. Indeed, the claimant reported

> *zero* back-related symptoms, whether pain or otherwise, in 2010.
> And, of course, the claimant made no allegations of back pain or
> other back-related problems during either of his year-long gaps in
> treatment. To be sure, the record established the presence of spinal
> abnormalities, and it is reasonable to conclude that the claimant
> experiences a degree of discomfort or pain. However, the overall
> record simply does not support his allegations of disabling back
> problems.

TR 16-19 (*citing* TR 205-10, 215-16, 219, 225-28, 238-39, 241-46, 251-52, 255, 257, 261-62).

As can be seen, the ALJ was aware of all of Plaintiff's back impairments, including his

diagnoses of degenerative disc disease and radiculopathy, and he discussed in detail the medical

evidence regarding Plaintiff's back impairments. Moreover, the ALJ also considered Plaintiff's

testimony and daily activities, and ultimately found that Plaintiff's allegations of disabling back

problems were less than fully credible because they conflicted with, and were unsupported by,

the medical evidence of record. TR 15, 19. Discounting credibility is appropriate when the ALJ

finds contradictions among the medical reports, the claimant's testimony, the claimant's daily

activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 862 F.2d at 1227; *cf*

*King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human*

*Servs.*, 823 F.2d 918, 921 (6th Cir. 1987)).

Although Plaintiff cites to evidence in the record that could support Plaintiff's meeting

some of the listing's requirements, Plaintiff overlooks conflicting evidence that the ALJ

explicitly noted in his decision. Specifically, the ALJ noted that Plaintiff's: (1) lumbar spine

MRI obtained by Dr. Wagner in December 2008 revealed "internal disc derangement and central

left paracentral shallow disc protrusion at L4-L5 and L5-S1, *without focal neural impingement*";

(2) examination with Dr. Wagner in February 2009 yielded a negative straight leg raise test and a

finding of "no objective weakness of the upper or lower extremities"; (3) examination with Dr. Wagner in March 2009 yielded findings of "no sensory or motor deficits" and "full range of motion in all planes with 'only slight bilateral posterior tenderness, without spasm'" regarding Plaintiff's cervical spine; (4) examination with Dr. Wagner in April 2009 yielded a finding of "no objective motor or sensory deficits"; (5) examinations with UNHS in 2010, MWCHC in November 2011, and RCHD in 2012, all yielded normal findings; and (6) consultative examination with Dr. Swanson in 2011 yielded findings of a symmetric back and normal extremities with "5/5 strength throughout." TR 15-18 (*citing* TR 205-06, 208, 209, 215-16, 219, 225-28, 238-39, 241-42, 243-46, 251-52, 255, 257). Moreover, an ALJ's decision is not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Because the ALJ properly evaluated the evidence of record and substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet or medically equal a Listing, Plaintiff's argument on this point fails.

## 2. Residual Functional Capacity ("RFC") Determination

Plaintiff argues that the ALJ's "myopic and selective focus on the medical evidence" renders his RFC determination unsupported by substantial evidence. Docket No. 13-1 at 7-8. In so arguing, Plaintiff contends that the ALJ's finding regarding his ability to occasionally lift and carry 50 pounds "finds no basis in the evidence of record and exceeds the statutory definition of 'light' work as assessed." Plaintiff specifically asserts that the ALJ's determination that he could perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)" actually contradicts 20 CFR 404.1567(b), which provides that "the statutory *maximum* that an individual must be able to

lift and carry on an occasional basis is 20 pounds." *Id.* at 9 (*citing* TR 15) (emphasis original).

Plaintiff explains that the ALJ's finding that Plaintiff could occasionally lift and carry 50 pounds

is instead consistent with "medium work as defined by 20 C.F.R § 404.1567(c) with downward

limitations," which is "contrary with the Commissioner's initial determination that [Plaintiff] is

limited to light and sedentary work based upon the same statutory definitions." *Id.*

Plaintiff further contends that, in determining his RFC, the ALJ improperly weighed the

opinion evidence and rendered a finding that exceeded Plaintiff's capabilities. *Id.* at 9, 11.

Specifically, Plaintiff contends that the ALJ's weighing of opinion evidence was "circular,

perfunctory, and internally inconsistent." *Id.* Plaintiff maintains that the ALJ not only failed to

address Dr. Wagner's opinions "that [Plaintiff's] medical ailment is stationary and permanent"

and that Plaintiff "is disabled under American Medical Association guidelines," but that he also

failed to weigh Dr. Swanson's opinion and consider its consistency with the evidence of record

before finding Dr. Roberts' opinion "worthy of great weight due to its consistency with Dr.

Swanson's opinion." *Id.* (*referencing* TR 20, 205-06).

Plaintiff further argues that the ALJ erroneously based his finding that Plaintiff could

occasionally lift and carry 50 pounds "upon a medical opinion formed only upon a fraction of the

evidence of record." *Id.* at 11. In particular, Plaintiff contends that Dr. Swanson's opinion is

"incomplete" and inconsistent with the record as a whole. *Id.* at 9. Specifically, Plaintiff asserts

that Dr. Swanson: (1) "denied the existence of" MRI scans of Plaintiff's back; and (2) did not

mention Dr. Wagner's or Dr. Elayali's observations of the MRI scans, or the "herniated discs at

C5-C6 and L5-S1." *Id.* at 10. Plaintiff additionally argues that Dr. Swanson erroneously referred

to x-rays "alone" in diagnosing Plaintiff with osteoarthritis, when osteoarthritis "is only a partial

diagnosis according to the MRI results," which "clearly" show "two herniated discs at C5-C6 and L5-S1 and shallow disc protrusions at C3 thru C-5 and L4-L5 with attendant nerve root compression." *Id.* (*citing* TR 209-10). Supporting his argument that Dr. Swanson's opinion is inconsistent with the record, Plaintiff notes that "Dr. Roberts opined that the restrictions assessed by Dr. Swanson are not supported by the evidence." *Id.* (*citing* TR 237).

Plaintiff argues that, even assuming that Dr. Roberts' opinion was "worthy of great weight," Dr. Roberts assessed Plaintiff's ability to lift "at no more than 20 pounds occasionally and 10 pounds frequently." *Id.* at 10 (*citing* TR 231). Plaintiff maintains that, unlike the ALJ's finding, Dr. Roberts' assessment is consistent with the statutory definition of light work. *Id.* Plaintiff further asserts that, unlike Dr. Swanson's opinion, Dr. Roberts' opinion is "the basis of the Commissioner's finding" and is supported by both Dr. Wagner's opinion and Plaintiff's assertions "which Dr. Roberts found entirely credible." *Id.* at 10.

Defendant responds that the ALJ properly considered the entirety of the evidence in formulating an RFC based on Plaintiff's credible limitations, and that substantial evidence supports the ALJ's RFC determination. Docket No. 14 at 13. With regard to Plaintiff's argument that the ALJ's assessment of his ability to occasionally lift and carry 50 pounds exceeds the statutory definition of light work and thus renders the RFC erroneous, Defendant argues that it is "entirely within the ALJ's discretion to determine an individual can perform all the requirements of an exertional category with certain exceptions," and further contends that the ALJ's assessment "finds direct support in the record." *Id.* at 11. Specifically, Defendant notes that Dr. Swanson opined that Plaintiff had "no restrictions on his ability to lift and/or carry," based on his February 2011 examination of Plaintiff, which revealed "full strength in all major

muscle groups; a symmetric back with no spinal tenderness, no paraspinal muscle spasms, and no bony abnormalities; normal extremities; and full range of motion other than in his dorsolumbar spine and reduced flexion in his right hip." *Id.* at 11-12 (*citing* TR 226-28).

Defendant asserts that, contrary to "Plaintiff's arguments [which] seem to rely on the false premise that the ALJ must base the RFC on a medical opinion," the ALJ formulates the RFC based on the evidence of record and the RFC does not need to correspond directly to one particular opinion. *Id.* at 13. Defendant additionally responds that the ALJ "explicitly" addressed and discussed all of the medical opinions of record. *Id.* at 12. Defendant points out that the ALJ gave Dr. Roberts's opinion "great," but not controlling, weight, explaining that it was consistent with Dr. Swanson's opinion, and that it accounted for Plaintiff's abnormal imaging, reports of pain, and findings of limited range of motion, as well as Plaintiff's significant treatment gaps and conservative treatment in the record. *Id.* at 13 (*citing* TR 20). Defendant notes that the ALJ discussed Dr. Elalayli's: (1) examination findings, including that Plaintiff "did not appear to be in distress" and had good pulses, steady gait, "moderately restricted" spinal range of motion, positive leg raise testing on the left leg, and lower back tenderness; (2) diagnosis of degenerative disc disease and herniated disc; and (3) recommendation of injections or surgery. *Id.* at 12 (*citing* TR 17) (*referencing* TR 261). Defendant also notes that the ALJ discussed in detail Dr. Wagner's findings, including his statements that Plaintiff's condition was "stationary and permanent" and that Plaintiff had a "20 percent permanent-partial impairment." *Id.* at 12 (*citing* TR 16-17) (*referencing* TR 205, 208, 209, 215, 220-21). Regarding Dr. Wagner's finding that Plaintiff had a "20 percent permanent-partial impairment," Defendant asserts that a finding made under another set of guidelines is "not determinative." *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

In the case at bar, after evaluating all of the objective and testimonial evidence of record and Plaintiff's reported level of activity, the ALJ determined that Plaintiff retained an RFC for a range of light work with additional limitations. TR 15-21. Specifically, the ALJ found:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk for a total of about 6 hours in an 8-hour day; sit for a total of about 6 hours in an 8-hour day; never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps or stairs; occasionally stoop; frequently balance, kneel, and crouch; should avoid working at unprotected heights; and due to being very limited in communication in English, could not perform any duties that would involve significant/substantial conversations in English or that would involve following oral instructions.

TR 15.

In making this determination, the ALJ considered the hearing testimony, medical records,

medical source statements, and Plaintiff's subjective complaints. TR 15-21. As discussed in the

previous statement of error, the ALJ properly and thoroughly evaluated the evidence of record

before ultimately finding Plaintiff's subjective complaints to be "not fully credible." TR 16-18.

The ALJ explained his reasoning as follows:

> The claimant's statement concerning his functional limitations, and
> his alleged inability to speak and understand any English, are not
> fully credible, for several reasons.
>
> First, the claimant has sought and received only minimal,
> conservative treatment. For example, throughout the period in
> question, the claimant has generally been treated only with
> medications, with a short period during which he also received
> physical therapy, chiropractic care, and injections. In addition,
> although Dr. Elalayli recommended a series of epidural steroid
> injections or, in the alternative, back surgery, the claimant pursued
> *neither* treatment option. This limited amount of treatment–and
> only conservative treatment, at that–stands in contrast to the
> claimant's allegations of significantly limiting symptoms.
>
> Second, on a related note, the claimant has pursued only sporadic,
> short-term treatment throughout the period in question. . . . Of
> those *51 months*, the claimant's documented treatment covers a
> combined period of *less than 7 months.* And those seven months
> were significantly spread out across the period in question, as
> follows: the claimant saw Dr. Wagner/Dr. Elalayli for about four
> month[s], went about *one year* with no treatment whatsoever,
> visited UNHS for about one month, went *one year and four months*
> with no treatment whatsoever, visited Matthew Walker for one
> *day*, visited RCHD for about one month, and there is no
> documented treatment from April 2012 through the hearing date,
> another span of approximately 10 months. In sum, the claimant
> pursued treatment for a few months following an automobile
> accident, and after that, he pursued very little additional treatment.
> Such sporadic, short-term treatment is not indicative of significant
> symptoms or limitations, not to mention disabling symptoms or
> limitations.
>
> Third, several of the claimant's physical examinations yielded
> completely normal findings. For example, at both of the claimant's

UNHS visits in 2010, his physical exams were completely normal. Similarly, his single visit to Matthew Walker also included a completely normal physical exam. The presence in the record of multiple completely normal physical exams stands in stark contrast to the claimant's allegations of disabling symptoms and limitations.

Fourth, the claimant's allegations of disabling neck pain are inconsistent with the overall record and with my observations during the hearing. For example, while some "discomfort" and "stiffness" were noted relatively early in the period at issue, there are no indications of significant neck pain at any time. Rather, there are multiple examinations that yielded normal findings of the neck area. These include findings by Dr. Wagner of full neck range of motion, normal neck-related findings by RCHD, and normal neck-related finding, including full range of motion, by Dr. Swanson, the consultative examiner. Moreover, during the hearing, the claimant stated that he could not turn his head to either side because of his alleged neck/cervical spine pain; however, I observed the claimant repeatedly to turn his head nearly 180 degrees to talk with the Spanish language interpreter who was sitting to the claimant's right. These exam findings and personal observations during the hearing stand in stark contrast to the claimant's allegations of disabling neck pain.

Fifth, the claimant's reported back-related problems have been inconsistent, as a whole. For example, while the claimant testified to severe back pain that was disabling in nature, his reported episodes of severe back pain have been intermittent, at most, according to a review of the record. Indeed, the claimant reported *zero* back-related symptoms, whether pain or otherwise, in 2010. And, of course, the claimant made no allegations of back pain or other back-related problems during either of his year-long gaps in treatment. To be sure, the record established the presence of spinal abnormalities, and it is reasonable to conclude that the claimant experiences a degree of discomfort or pain. However, the overall record simply does not support his allegations of disabling back problems.

Sixth, the claimant has made inconsistent statements concerning work performed after the alleged onset date. During the hearing, the claimant indicated both that he had been unable to work at all since the date of his automobile accident, November 19, 2008, and

that he had worked for three or four weeks as a produce truck driver for several Chinese restaurants early in 2009. However, treatment records from UNHS, dated June 22, 2010, reflect the claimant's report that he worked at that time as a truck driver, and he provided a relatively detailed explanation of his dietary habits, including how many times per day he ate and how often he consumed fast food, "while on the roads." When asked during the hearing about this June 2010 statement, the claimant indicated that he was referring to his job driving for the Chinese restaurants. I note that the claimant's brief job driving a produce truck for Chinese restaurants took place during the first quarter of 2009, whereas his statement to UNHS was made in June 2010, *at least* 15 months after his job for the Chinese restaurants ended. At minimum, these conflicting statements raise questions concerning the reliability of the claimant's statements, in general.

Finally, there are significant questions as to the truthfulness of the claimant's assertion that he is completely unable to communicate in English. During the hearing, the claimant testified that he could neither speak nor understand any English at all. There are several reasons to doubt this statement. For instance, the claimant apparently has functioned adequately in the United States for more than a quarter century, having lived continuously in the United States since he was age 15 (according to his testimony), which would be extraordinarily difficult to do with a complete inability to speak or understand English. During that time, the claimant has raised five children, all of whom were educated in the United States and all of whom speak both Spanish and English; this fact further calls into question the claimant's statement that he was completely unable to speak or understand English at all. In addition, the claimant was able to obtain a valid Tennessee driver's license. Moreover, there is absolutely no indication anywhere in the record of evidence that the claimant had any difficulty communicating with any treating doctors, consultative examining doctors, or other care providers. Finally–and perhaps most telling–during the hearing, the claimant occasionally answered some of my questions before the Spanish language interpreter could translate them; clearly, he would not have been able to do so if he had a complete inability to understand English, as he stated.

In light of the foregoing considerations, the claimant's statement concerning his function limitations are not credible to the extent they are inconsistent with the above residual functional capacity.

TR 18-20 (emphasis original).

After discussing the opinion evidence of record as set forth in the statement of error

above, the ALJ explained:

> As for the opinion evidence, I give great weight to the opinion of
> Dr. Melvin Roberts, a state agency medical consultant. Dr.
> Roberts opined that the claimant could perform a reduced range of
> light work, as generally reflected in the above residual functional
> capacity. Ex. 3F, pp. 2-5. Dr. Roberts's opinion is supported by
> the totality of the evidence, including abnormal imaging and some
> reports of pain and limited range of motion, but also significant
> treatment gaps and only conservative treatment. In addition, Dr.
> Roberts's opinion is fully consistent with that of Dr. Erik Swanson,
> the consultative examiner. Ex. 2F, pp. 7-8. I note that there are no
> treating source opinions of record. In light of the foregoing
> considerations and in the absence of any opinion to the contrary, I
> give great weight to Dr. Roberts's opinion. I further note that the
> additional restrictions in the above residual functional capacity
> reflect my assessment of which portion of the claimant's hearing
> testimony were actually valid and credible.

TR 20 (*citing* TR 231-34, 228-29).

As noted, the ALJ ultimately found that Plaintiff retained the RFC to perform a range of

light work with additional limitations. TR 15. The Regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls. To be considered capable of
> performing a full or wide range of light work, you must have the
> ability to do substantially all of these activities. If someone can do
> light work, we determine that he or she can also do sedentary work,
> unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

20 CFR 404.1567(b).

Although Plaintiff is correct in noting that "light work" as defined in 20 CFR 404.1567(b) sets forth a maximum of 20 pounds for lifting, hearing testimony shows that the ALJ explicitly discussed Plaintiff's ability to occasionally lift and carry 50 pounds with the VE, and ultimately decided in Plaintiff's benefit to classify his RFC according to the more restrictive definition of light work, despite Plaintiff's ability to occasionally lift and carry more than 20 pounds. Specifically, the ALJ discussed this with the VE at the hearing as follows:

> ALJ: Frequently lifting or carrying ten pounds. But, all right, he has no restrictions to occasionally lifting and carrying. See if you look at page seven, with regard to occasionally lifting and carrying there's no restrictions. So to me that would indicate that he could pretty much lift and carry any weight as long as it's only occasional. And he could frequently lift and carry up to ten pounds. So to me that looks like that would meet the, wouldn't that meet the definition for at least light exertional work, Ms. Neel?

> VE: Yes, Your Honor, it would.

> . . .

> ALJ: . . . so essentially this hypothetical person can perform the full range of light exertional work. More specifically, this person, well, it's a little bit more than that because this person can occasionally lift and carry up to 50 pounds. But this person can frequently lift and carry no more than 10 pounds. This person can stand and or walk for a total of about six hours in an eight hour work day, and sit for a total of about six hours in an eight hour work day. This person has no limitations with regard to pushing and pulling with the upper extremities. . . .

> . . .

> ALJ: Would Mr. Collazo be able to perform his work activity of a delivery driver as he actually performed that job?

> VE: Yes, Your Honor, I believe it would be available as he

performed it.

TR 34, 52-53.

As can be seen, the ALJ acknowledged that the ability to occasionally lift and carry 50 pounds exceeded the statutory definition of light work, but decided to give Plaintiff the benefit and assign him the more restrictive RFC for light work with certain exceptions. This is within the province of the ALJ. *See* SSR 96-8p. As can also be seen, even assigning Plaintiff the more restrictive RFC for light work, the VE testified that Plaintiff would be able to perform his work activity of a delivery driver as he actually performed that job.[4] TR 53. The VE also identified that Plaintiff would be able to perform the jobs of cleaner (DOT #323.687-014/SVP 2), conveyer line worker (DOT #524.687-022/SVP 2), machine tender (DOT #556.685–22/SVP 2), and boner (DOT # 525.687-066/SVP 2), all of which involve lifting no more than 20 pounds occasionally and are consistent with the definition of light work. *See* TR 22, 54; 20 C.F.R. §§ 404.1567(b), 416.967(b); DOT. Because the jobs identified by the VE and accepted by the ALJ involve lifting no more than 20 pounds occasionally and are consistent with the definition of light work, Plaintiff's contention on this point fails.

Moreover, as has been demonstrated, the ALJ comprehensively discussed the objective and testimonial evidence of record, the weight accorded thereto, and the reasons therefor. Plaintiff's contentions that the ALJ's consideration of the opinions of Drs. Wagner, Swanson, and Roberts was erroneous and that the ALJ had a "myopic and selective focus on the medical

---

[4] Despite the VE's testimony, the ALJ ultimately found that Plaintiff would be unable to return to his past relevant work as a deliverer because, although Plaintiff could perform deliverer work as he had actually performed it, the demands of that job as normally performed exceed the determined RFC. TR 21. In so doing, the ALJ gave Plaintiff the benefit of increased limitations.

evidence" are simply unsupported by the ALJ's decision, which demonstrates that he discussed the opinion evidence in detail and based his RFC determination on the evidence of record as a whole, including the hearing testimony, medical records, medical source statements, and Plaintiff's subjective complaints. TR 15-21. Furthermore, the ALJ's determination that Plaintiff retained the RFC to perform a range of light work with additional limitations is supported by the evidence of record as a whole. *See* TR 13-23.

Because the ALJ properly considered the record in its entirety and there is substantial evidence in the record to support the ALJ's RFC determination, the ALJ's determination must stand. Accordingly, Plaintiff's argument fails.

### IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

_____

E. CLIFTON KNOWLES
United States Magistrate Judge